ORIGINAL

Frederick L. Whitmer (FW-8888)
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036
212.775.8700
fwhitmer@kilpatricktownsend.com

Attorney for Plaintiff

Lyle S. Hosoda 3964-0
HOSODA & MORIKONE, LLC
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone No.: (808) 524-3700
Facsimile No.: (808 524-3838

Local Counsel for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 10 2012

at 3 o'clock and 40 min P M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF HAWAII

| | |
|---|---|
| BLUE CROSS and BLUE SHIELD ASSOCIATION, a not-for-profit corporation of the State of Illinois,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS (ASIA-PACIFIC) INSURANCE, LIMITED, a for-profit corporation of Hong Kong,<br><br>Defendant. | CIVIL NO. CV 12 00189 DAE KSC<br><br>COMPLAINT FOR BREACH OF CONTRACT REQUIRING ANCILLARY ASSISTANCE FROM A CO-RELATIVE SOVEREIGNTY; EXHIBITS "A" & "B"; JURY DEMAND |

1

Plaintiff BLUE CROSS and BLUE SHIELD ASSOCIATION, an Illinois not-for-profit membership-based corporation, referred to herein variously as "Plaintiff" or "BCBSA," as and for its Complaint against Defendant BLUE CROSS (ASIA-PACIFIC) INSURANCE, LIMITED, a for-profit corporation of Hong Kong, for Defendant's breach of a Settlement Agreement, entered into between April and July of 1993, respecting Plaintiff BCBSA's long-standing and incontestable rights to various trademarks employing the name "Blue Cross," "Blue Shield," and various insignia related to those marks, all of which identify Plaintiff's licensees as genuine Blue Cross/Blue Shield providers of quality insurance services, allege as follows:

## THE PARTIES

1. Plaintiff Blue Cross and Blue Shield Association ("BCBSA") is a not-for-profit membership-based corporation organized and existing under the laws of the State of Illinois, having its corporate offices at 225 North Michigan Avenue, Chicago, IL 60601-7680.

2. Defendant Blue Cross (Asia-Pacific) Insurance, Limited, ("BCAP") is a for-profit corporation, organized and existing under the laws of Hong Kong, with its principal place of business in Hong Kong.

## JURISDICTION AND VENUE

3. This is an action for breach of contract arising under the laws of the United States and of the State of Hawaii, whose laws govern this action by agreement of the parties as reflected in a contract entitled "Settlement Agreement."

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332 and 1338(a).

5. This Court has personal jurisdiction over this Defendant by virtue of its consent to submit to the jurisdiction of this Court as one of the terms of the Settlement Agreement, as further alleged herein, which both parties to the instant action executed in 1993, intending to be bound by that Settlement Agreement.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(a)(3) and(d) and §1400(b).

## FIRST CAUSE OF ACTION

7. Headquartered in Chicago, Illinois, BCBSA is a national association of 38 independent, community-based, and locally operated BLUE CROSS and BLUE SHIELD companies (the "BCBS Member Plans"). BCBSA represents the oldest and largest family of health-benefit companies in the U.S. For over 75 years, BCBSA (including through its predecessors in interest and its BCBS Member Plans and licensees) have provided millions of families with top-quality, affordable health insurance. The BCBS Member Plans currently provide healthcare coverage for more than 99 million people in the U.S., or about one in three Americans – and also offer coverage in many countries worldwide. More than 90% of hospitals and 80% of physicians in the United States contract with BCBS Member Plans – more than any other insurer. BCBS Member Plans currently provide coverage for half of all Fortune 500 companies and more than three-quarters of all Fortune 100 companies.

8. The BLUE CROSS and BLUE SHIELD brands are the most recognized in the health-insurance industry in the United States – and among the most recognized in any industry. BCBSA is the owner of trademarks and service marks such as BLUE CROSS and BLUE SHIELD – as well as design logos used as trademarks and service marks consisting of the image of a Blue Cross or the image of a Blue Shield (or both) – and licenses the use of

various such marks to the BCBS Member Plans and other licensees for the provision of health insurance, health care delivery services, financing access to health care, and related goods and service worldwide. BCBSA (including through its predecessors in interest and its BCBS Member Plans and licensees) has been using these trademarks and service marks since at least as early as 1934 (BLUE CROSS) and 1939 (BLUE SHIELD).

9. Currently, in the Unites States alone, BCBSA owns approximately 200 valid and subsisting U.S. federal trademark and service mark registrations. These registrations are publicly available through the U.S. Patent & Trademark Office and for many years have been publicly available online through the U.S. Patent & Trademark Office's website – meaning anyone with Internet access can quickly and within minutes see official records of BCBSA's registrations and information such as BCBSA's location in Illinois. Many of the U.S. federal registrations have become incontestable under Section 15 of the Lanham Act, making them conclusive evidence of BCBSA's exclusive rights to use or authorize the use of such marks in commerce. Additionally, BCBSA owns similar trademark and service mark registrations in more than 170 countries throughout the world. All these (along with numerous trade names and common-law marks) form a BLUE "family" of trade names, trademarks, and service marks ("Blue Marks").

10. Many of the Blue Marks consist entirely or substantially of either a Blue Cross design logo or the words BLUE CROSS (or both) ("Blue Cross Marks"). The Blue Cross Marks that are Greek crosses (crosses with four equal arms at right angles) are among the most famous and well-known of the Blue Cross Marks; but historically and through the present, the Blue Cross Marks span a wide range of differently configured crosses and a

wide range of blue colors, from light to dark and through a variety of hues and tones. A list of several of BCBSA's U.S. federal trademark registrations for its Blue Cross Marks is attached as Exhibit A.

11. BCBSA (including through its BCBS Member Plan and licensees) have extensively used, advertised, and promoted the Blue Marks throughout the United States and globally. In 2011 alone, total system-wide gross revenue surpassed $377 billion. BCBSA spends millions of dollars in advertising and promoting its marks, services, products, and image thereby creating substantial goodwill in the marketplace. As a result, the general public recognizes the Blue Marks separately and collectively as identifying BCBSA and its BCBS Member Plans and licensees – and the quality services they render. The Blue Marks are an asset of incalculable value to BCBSA; and it has vigorously and successfully protected its marks.

12. At least as far back as 1977, federal district courts and other legal panels such as the World Intellectual Property Organization Uniform Dispute Resolution Policy Panel have expressly recognized the fame of the Blue Marks (including the Blue Cross Marks) in designating the services of BCBSA (and its BCBS Member Plans and licensees) in the context of trademark disputes or litigation.

13. The marks identified in Exhibit A hereto are incontestable.

14. The Blue Cross name and the BLUE CROSS trademark are among the world's most well-known marks, representing quality insurance services. The goodwill that inheres in the names, marks and devices employing the Blue Cross name and designs, has been developed, enhanced and protected for many years throughout the world through the efforts and investment of BCBSA and its licensees. The consuming public has over

many, many years associated the Blue Cross name with first class quality insurance programs, which, consequently, has further enhanced the value and prestige of being associated with the Blue Cross name and marks.

15. BCBSA has licensed the Blue Cross names and marks to a number of insurance company entities, who meet the standards that BCBSA has created for those that are authorized to display and promote the Blue Cross name and marks.

16. The Defendant is neither authorized nor licensed to hold itself out as being associated or licensed by BCBSA.

17. Prior to 1993, BCBSA became aware that BCAP, alone, and in combination with others, was actively soliciting insurance business from the consuming public in Hong Kong, and places outside of Hong Kong, under the Blue Cross name and mark, all of which activity was done without the permission or under license, either express or implied from BCBSA.

18. As a consequence of BCAP's activities respecting its unauthorized use of BCBSA's famous and incontestable marks, BCBSA instituted an action in this Court entitled, *Blue Cross and Blue Shield Association v. Blue Cross (Asia-Pacific) Insurance, Ltd., et alia*, Civil Action No. 92-00671, against BCAP and others, alleging that the defendants' actions invaded BCBSA's rights by creating the likelihood of confusion among the consuming public as to the origin of insurance services offered by the Defendants, by promoting the impression that the Defendants' services originated with, were associated with, authorized by or licensed by BCBSA ("the Original Hawaii Action").

19. The Original Hawaii Action was resolved on consent in 1993 when the parties in that action entered into a Settlement Agreement ("the Settlement Agreement") that provided

for the dismissal of the Original Hawaii Action and prescribed the future conduct and obligations of the parties, especially including BCAP. A true copy of the Settlement Agreement is attached to this Complaint as Exhibit B. Under the terms of the Settlement Agreement, BCAP agreed, *inter alia*, that it:

    a)    would cease all use of the words "BLUE CROSS" and a blue cross design in connection with advertising, promotion, sale or offering for sale of insurance outside Hong Kong including, but not limited to, knowingly entering into insurance contracts in Hong Kong with persons or companies not residing or located there for insurance coverage outside Hong Kong; and

    b)    does not, and in the future will not, advertise, promote, sell or offer for sale insurance outside Hong Kong using the name or marks Blue Cross or Blue Shield or a name containing the words "BLUE" or "CROSS," either alone or in conjunction with any word or design or any of the BLUE family of marks.

20.    In the Settlement Agreement, all parties consented to the jurisdiction of this Court for the resolution of disputes respecting the Settlement Agreement as reflected in ¶14, agreeing further that the Settlement Agreement "and all provisions thereof, shall be governed and interpreted under the laws of the United States and the State of Hawaii. The parties hereto agree that in the event of a dispute arising out of this Settlement Agreement, litigation may be commenced only in the United States District Court in and for the District of Hawaii. All parties hereto consent to jurisdiction and venue in the event such litigation is commenced by any party in that court."

21. Both Defendant BCAP and Plaintiff BCBSA intended for the Settlement Agreement to be binding upon them in all respects, and for this Court to enforce the Settlement Agreement by its terms. The parties thereby also agreed to obey such orders, judgments and decrees as this Court might enter in furtherance of its adjudicatory authority to enforce its judgments as reflected in ¶13 of the Settlement Agreement, for otherwise, the promises made by BCAP, at a minimum, would have been nugatory and illusory.

22. By executing the Settlement Agreement, BCAP intended to be bound by any judgment of this Court and any disputes under the Settlement Agreement.

23. Since 1993, BCBSA has continued to expand its business and goodwill throughout the world, in part in reliance on the fact that BCAP had carried out its obligations under the Settlement Agreement and had ceased "all use of the words 'BLUE CROSS' and a blue cross design in connection with advertising, promotion, sale or offering for sale of insurance in the United States, its territories and possessions, and all other areas outside of Hong Kong," as required by ¶2 of the Settlement Agreement.

24. In 2011 however, BCBSA learned that, contrary to its express disclaimer and abjuration of any use of the words "BLUE CROSS and a blue cross design in connection with advertising, promotion, sale or offering for sale of insurance in the United States, its territories and possessions, and *all* other areas of the world outside of Hong Kong," BCAP has been engaged in activity in the People's Republic of China, therefore *outside* of Hong Kong, as well as in internet and telephonic sales, that advertises, promotes, sells and offers to sell insurance to persons or entities *outside* of Hong Kong or to persons not resident in Hong Kong, thereby breaching BCAP's obligations under the Settlement Agreement.

25. Upon learning that BCAP had breached the Settlement Agreement, BCBSA demanded that BCAP immediately discontinue its breaching activity and once more adhere to the representations, promises and obligations that BCAP had undertaken in the Settlement Agreement.

26. BCAP has refused to discontinue all activities that advertise, promote, sell and/or offer to sell insurance both to persons or entities outside of Hong Kong or to persons in Hong Kong who are not resident there.

27. BCAP's activities that advertise, promote, sell and/or offer to sell insurance to persons or entities outside of Hong Kong or to persons who are not resident in HK constitute breaches of the Settlement Agreement.

28. BCAP's activities that advertise, promote, sell and/or offer to sell insurance to persons or entities outside of Hong Kong or to persons who are not resident in Hong Kong inflict harm on BCBSA for which it has no adequate remedy at law.

29. At or about the same time as the filing of this action, BCBSA will take action in Hong Kong to preserve the jurisdiction and adjudicatory authority of this Court, the chosen forum by the parties for the resolution of disputes under the Settlement Agreement ('the Hong Kong Enforcement Action").

30. BCBSA will bring the Hong Kong Enforcement Action in the Courts of Hong Kong, where BCAP is physically located, where it conducts business, and where its person may be corporeally present for the enforcement of equitable relief, in order to give full effect to the intent of the parties to the Settlement Agreement. BCBSA will file the Hong Kong Enforcement Action because, as a matter of Hong Kong internal law, the Hong Kong Court may not necessarily, without further inquiry, examination and independent

judgment, enforce any judgment, order or decree of this Court. Accordingly, BCBSA's filing of the Hong Kong Enforcement Action for a Writ of Assistance in a Hong Kong court of competent jurisdiction is intended to, and should insure that, any relief that BCBSA obtains in this Court shall be given full force and effect by the competent juridical authorities of Hong Kong.

31. BCAP's actions, as alleged above, have inflicted injury to the business and property of BCBSA in an amount, not fully determinable, and which actions and consequent injury will continue to inflict injury to the business and property of BCBSA unless and until this Court and the Courts of Hong Kong exercise their respective equitable and legal powers to enjoin and restrain BCAP, its officers, agents, employees, attorneys and all those in active concert and participation with them from taking any action, directly or indirectly from advertising, promoting, selling and/or offering to sell insurance to persons or entities outside of Hong Kong.

32. BCAP as a Hong Kong entity is and was in a better position than BCBSA to know that Hong Kong courts may not automatically enforce an injunction issued by a United States District Court, even where that forum had been agreed to constitute the exclusive adjudicatory authority for the resolutions of conflicts related to the Settlement Agreement. BCAP nevertheless agreed to be bound by the decision of this Court respecting controversies arising out of the Settlement Agreement.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Blue Cross and Blue Shield Association prays for the entry of judgment in its favor and as against Defendant Blue Cross (Asia-Pacific) Insurance, Limited as follows:

A. Damages in an amount to be proven at trial;

B. An injunction permanently restraining and enjoining Defendant, its officers, directors, employees and managing agents, from the use of "Blue Cross" or a blue cross design or device in connection with the advertising, promoting, selling or offering to sell insurance to persons or entities outside of Hong Kong as well as to offer to sell or sell insurance either 1) to persons in Hong Kong, who are not permanently residing in Hong Kong or 2) to corporate or non-human entities not having permanent locations in Hong Kong;

C. An injunction enjoining and directing Defendant its officers, directors, employees and managing agents, to consent to the entry in Hong Kong (or any other jurisdiction in which Defendant is subject to the *in personam* jurisdiction of that court) of a judgment embodying and enforcing any order, judgment or decree ;

D. An award of attorney's fees and costs, including costs otherwise taxable at law; and

E. Such other and further relief as the Court deems just and proper.

Dated: Honolulu, Hawaii, April 10, 2012

_____
LYLE S. HOSODA
Local Counsel for Plaintiff

*Frederick L. Whitmer*
_____
**FREDERICK L. WHITMER (FW-8888)**
**Attorneys for Plaintiff**